Be seated. And we will call today's last case, please. 313-0332, Coal City Redi-Mix Company, head office, approved by Brett Geiger v. Pontiac Exchange, Inc. Mr. McClary. May it please the Court, Counsel, good afternoon, Your Honor. I think it appropriate that your final case of the day involves a fight over a motorcycle. Basically, this case boils down to how this Court interprets the statute, which, as far as I can tell, has never been interpreted by another court in this State. And the statute, of course, is Section M of the Citation to Discover Asset Statute, which states quite simply, The lien established under this section does not affect the rights of citation respondents in property prior to the service of the citation upon them, and does not affect the rights of bona fide purchasers or lenders without notice of the citation. The last 17 words in that section, and does not affect the rights of bona fide purchasers or lenders without notice of the citation, I believe are the most significant section of that statute in regard to the facts of this case. Let me inquire as to what is the lien established under this section? The citation lien, Your Honor. Okay, but when does that lien become effective on property? Now, it depends upon who it's served upon. In regard to Mr. Kavanaugh, who was the defendant in this case, the citation was served upon him before he had any contact with Pontiac Exchange. And in regard to him... Now, that was a citation to discover assets? That's correct, Your Honor. Okay, so, what is your understanding of a citation to discover assets? A citation? The citation lien of the citation to discover assets creates a lien on all personal property. No, no, no, no, no. What is a citation to discover assets? Supplemental proceedings to try to find assets to satisfy a judgment then. Right, and how does that citation get issued? By service, issued by the court, service upon the defendant or a third party. Correct. Okay, and basically it's to discover assets, and any assets so discovered, what involvement does the court have at that point? Once it's brought to the court's attention what assets they are, then the court can make a determination as to what's going to be done with those assets. Okay, so it's just a discovery tool at this point, am I correct? I think it's a little bit more than that, Your Honor, simply because of the lien that's created. So you're saying, when does the lien get created? Okay, as to the defendant, it's created upon him... It's always a defendant, well, not necessarily, we got the exception here, go ahead. Yeah, yeah. As to the defendant, it creates a lien on his personal property upon the date of the service, and that lien persists until basically the citation is discharged. Okay, but the lien exists, but any movement of the property per se, or recovery of the property by a creditor can't be had until there's court action, am I correct? I believe that once the lien is established, Your Honor, the citation defendant would be in violation of that lien if he attempts to convey out the property to someone else. Correct, but the creditor, other than establishing the lien, the creditor can't do anything with the property, am I correct? That's correct, until there's court action in regard to it. I just want to put everything into a context, it's been a number of years. You're talking about the... Since I was on the trial... You're talking about the judge, when you say the creditor, so we're talking about the judgment creditor? We're talking about... Yes, the judgment creditor. Okay, all right. I just wanted to get context here because sometimes, especially people who practice the credit, it all becomes a mishmash for the uninitiated. Quite, quite right. After the discovery citation, the judge can say, what are the properties... Who are you referring to? That's right, Your Honor. Or you can say, you now know where the asset is, take some other kind of action if you want. The court has broad discretion. The court doesn't have to transfer the property. You can say, take some other action. Now that you know they've got money, file a garnishment, or now that you know you can file this, right? That's correct, Your Honor. The judgment creditor can't take self-help action. No, the whole purpose of this is to prevent such self-help action. Okay, so what's... Is your client a purchaser or a lender? Pawnbroker. Well, that isn't... And it's both a lender and a bona fide purchaser. That's our contention. I mean, I knew it was a pawnbroker, but it's got to fit into the language when you walk in there and you give them a title, in this case, and a power of attorney, and the motorcycle. At that point, are they a purchaser or a lender or something different? Both. I think it'd be both at the same time. Sure, easy. Well, if I purchase something from you, I'm not owning your money. When you pawn something, you get a redemption ticket, do you not? That's correct, Your Honor. Okay, and the pawnbroker is restricted by statutory requirements as to the amount of interest can be charged. Am I correct? Actually, Your Honor, I will admit that I am ignorant as to whether the pawnbroker is subject to any usury laws in the state or not. Okay, so at that point, when do they become a bona fide purchaser? When the redemption period expires? No, we would submit, Your Honor, that they become a bona fide purchaser at the time that the pawn contract is entered into, and here's the reason why. When you enter into the pawn contract, as in this case, basically, they get money, they hand over the physical possession, they hand over the title, and they hand over documentation necessary for the pawnbroker to contact the Secretary of State to have the title transferred over. But they cannot do that, can they, until the redemption period expires? That's correct, Your Honor, but here's the trick to that. At that point, as far as the pawnbroker is concerned, and as far as the defendant is concerned, Mr. Cavanaugh, that transaction is completed. Mr. Cavanaugh has to take affirmative action to get his item back. As a matter of fact, the pawnbroker statute talks about resaling the item back to the person who pawned the item. Well, this is no different, what happened here, than a payday loan, or for that matter, a vehicle thing, with one exception, and, you know, when you go out and finance your car at the bank, they hold the title, but not the possession of the, so it's kind of a, and you refer to that as a secured transaction, and this is almost like a super, up until the redemption period expires, isn't this like a super secured transaction, because they not only got the title, and the ability to transfer it to themselves, but they've actually got the collateral, in this case, a motorcycle. You know, it would be hard to think of anything much more secured than that, in my view, and so I guess what I'm saying is, if you purchase something, now it's mine, and I'm not going to lend you money, here, give me your papers, I'll give you ten bucks, I purchased them, they're mine. And that's what happens, basically, after the redemption period, but while it's on there, it's pretty much, isn't a pawn transaction just a secured loan? It's a loan, but it's a special type of, also, of a sale, simply because it's almost as if you're purchasing land from somebody, and at the same time you purchase the land, you give them an option to purchase it back in a year for a set amount. But that isn't what, it wasn't just, I mean, they had, well, I guess, well, run that by me again. Sure, it's as if you're purchasing property, real estate, purchasing land, and at the same time you purchase the land, you give the other person an option to repurchase in one year for a set amount. Would you, if you were the purchaser, have a deed in that you'd file it, in the county courthouse? Yes, yes. A pawnbroker can't do that, can they? Not until the redemption period expires, that's correct, Your Honor. So that isn't a total analogy. It's rather close to the factual situation, and one of the few cases that I think is on point is, Daniums v. Anderson, 162 Illinois 2nd, 47, which involved a case where someone was purchasing property, basically land, and they hadn't gotten to the closing. It was basically a purchase on contract, and they had made fairly significant payments. Then they found out that as part of the land, there was somebody else who had an option to purchase, and of course this all went into litigation, and basically the Supreme Court stated that if you have a bona fide purchaser in that situation, they have bona fide status, at least as to the purchase price paid, prior to them becoming aware that there was an adverse interest in the land. By the way, pawnbrokers are subject to usury laws, and they can only charge 240% per year. I don't know why they stop there, but 240% is the most a pawnbroker can charge per year. I'm just glad they're not doing student loans. In regard to this case, Your Honor, as to... So you're saying that in fact, when someone goes into a pawnshop, they go in with a ring, they are a seller, a pawnbroker is a buyer, but the seller retains an option to repurchase. Exactly. That's your characterization of the transaction. And the basis for that is, that characterization is because the language in the statute mentions sale, resale. Resale, and also just looking at the transaction itself, Your Honor, getting to what the transaction actually is. The person who pawns the item has no obligation to come back at any point and redeem that property. The pawnbroker, usually on a fairly short-term basis, as in this case, I believe the redemption period of the transaction was made September 17th. The redemption period was October 17th. Yeah, that's regularly by statute too. And basically, that time period, you know, you can come back, you can redeem your property, but nothing is required for redemption. Somebody can take their money from a pawnbroker... Is a redemption the same as a purchase? Because that's the person who is taking the property there, there's got to be a good name for that person. When you're talking about a pawn situation, it's always a fairly amorphous type of situation, and it has elements both of loan redemption, where you're getting your security back, and also an actual resale back. So this is, if one wanted to be fair and get all sides to agree, it's a real hybrid transaction, isn't it? Yes, I think that's a fair characterization, Your Honor. In regard to the lender status, I think it's clear also that it's basically a lender type of situation. The pawnbroker statute itself, which defines pawnbrokers, starts off with every individual or business entity which lends money on the deposit of, or pledge of physically delivered personal property. And it goes on to say, those are pawnbrokers. We have a situation here where we have someone basically coming in, getting a loan, giving an item to the pawnbroker. I really don't see what else the pawnbroker has to be in order to qualify as a lender in this type of transaction. I just don't see that. In regard to the statute which governs these type of disputes, when you have a citation to discover assets, I believe it's clear under Illinois law that you look at the garnishment statute. And the garnishment statute states 735 ILCS 5 slash 12-708 to the extent that other property belonging to the judgment debtor, or in which the judgment debtor has an interest, is pledged to or held by the garnishee in good faith as security, or that the garnishee has other just claim against the other property, the garnishee is entitled to retain the other property. And there's no dispute that the transaction with your client occurred before the citation was served? Before the third party citation was served above my client. Our position is that the citation that was served upon the defendant, Mr. Cavanaugh, has no impact upon the pawnbroker. Mr. Cavanaugh could be punished for contempt of court for a violation of the lien on him. Since that lien was never disclosed to my client, we consider it to be a nullity as to the pawnbroker. But factually, time-wise, if he already pawned this motorcycle before the citation was served on him? No. He would have had the citation served upon him before he contacted the pawnbroker. He contacted the pawnbroker and had the pawn contract drawn up September 17th. My client was served with a third party citation on October 5th. Was he legally entitled to pawn the item? He wasn't, but my client was entitled as a bona fide purchaser or a lender without notice to deal with him. I think that's the whole purpose of Section M, to protect innocent third parties like my client in that type of situation. Who are without notice. Exactly. Mr. Cavanaugh would be subject to all full contempt of court. Definitely. And we'd ask that it be reversed and that my client have its motorcycle. Thank you, Your Honor. He's probably not in a hurry. He's a little cold for a motorcycle. Mr. Geiger. May it please the Court. Mr. McCleary. I'd like to pick up, I guess, on the conversation that had started about the nature of what this transaction was and maybe just redirect to the actual language that was used by the pawnbroker when they entered into this agreement. I know it's part of the appendix, and I think that we could probably rely on that language to see what the rights were of the pawnshop when they performed this transaction. There is a statute that governs what a pawnbroker is, but I think the purpose of that is to define what a pawnbroker is for purposes of regulating pawnbrokers, so you can't engage in that kind of activity without being subject to the Act. And I think if it's not in the Act, it's administrative that the 240% interest rate applies to what they can and can't do, because I remember being party to a case where they were making $5 loans and charging a $5 minimum on the loans they were making, and they got in trouble with their license because that was more than 240%. So I know that there are... $2,100%. Yeah. So I know that there are regulations. I think that's the purpose of the pawnbroker Act, is to bring them into the administrative sphere, not necessarily to define what every transaction that business does will be. Okay. What's your definition of what they did? My... You're saying all the rights are in that contract, right? Yes. And that as long as they're not an abrogation of the statute, that that defines the relationship between the parties. Yes. Okay. That if you're going to have a security interest, you have to have a security agreement. And I don't think that this is a super security interest because they have something that's inferior. If you were to go to a credit union or even a payday title loan store, they would take your title, they'd record themselves as the lien holder, they'd send it to the Secretary of State, and then that'd be noticed to the world. And that'd be a statutory security interest in the vehicle. So I think that that would be superior. But that's not what happened here. All that happened here is possession. They transferred possession of a vehicle. And that's all the pawnbroker had. And I think if you look at the agreement, it doesn't even say that they can take ownership of the vehicle. Mr. Kavanaugh could have revoked the power of attorney. I suspect that he should have a better agreement that says that the pawnbroker should have a better agreement that actually authorizes them either to get a lien on title or to have the authority to take ownership of the vehicle. But the one case that I think... Well, didn't the documents that the opposing counsel suggested, power of attorney and title, wouldn't that enable him to take those actions? I think that he would be capable of submitting the proper paperwork to transfer ownership. But I don't think that the signed agreement authorized the pawn shop to do that. It didn't say that he could. He certainly had the proper paperwork. I'm sure he may have someone sign a power of attorney every time he takes a pawn for a vehicle, just because he knows he's going to need it to transfer ownership of the title if the person never shows up. But the agreement itself didn't say, if you breach in 30 days, the pawn shop's entitled to take ownership, including executing the title by use of the power of attorney in our possession, etc., etc. It just said, we get to hold this. We get to keep it in our store until you repay us. Which makes the transaction a loan? Well, I think you could characterize it as an unsecured loan. But what's the lien statute talk about? It says lenders without notice are protected. It does. And so if this is a loan, the pawn shop's a lender, they had no notice. Here's the argument. We're not affecting their rights, because they never had a right to own the vehicle. They had a right to possess it, and they had a right to enforce this agreement, which said, if you don't pay us back, you're going to owe us 240% interest, and we get to keep the motorcycle indefinitely. They had a possessory lien, right? They had mere possession. I don't think that the pawn shop ever had a lien. When would they have to give up possession? Well, a third-party respondent's always going to have to give up possession. They're always going to have possession of whatever collateral it is you're seeking. So, yes, that right will be affected, and I think in the brief I say that the citation specifically says third parties in possession are people that you can pursue with third-party citations. Well, I think that most of them is if they were a purchaser. For example, after the time, unlike you said they can keep it indefinitely, after the redemption period expires, and the pawnbroker can't say, you know what, I'd rather have 240% interest on that money rather than a loan. So he said, what I'm going to do is I'm going to sue the guy and collect the repayment of the loan and the 240%. No can do. He can't do that. He's got the motorcycles his, end of discussion. The transaction's over. I don't know that he wouldn't be able to do that, but he wouldn't have the right to enforce or demand that amount of money. He can't. The contract's clear and the statute's clear. They agree that this is it. If he doesn't redeem it within so long, the motorcycles belongs to the thing. They can't track the guy that made the pawn down and say we want repayment of the loan and 240%. I don't know that the language of the contract is that clear, but if the statute provides that they can't then I would agree. For purposes of the citation context, I think it's pretty clear that they're not an owner because they never took title. And I think that even the Anderson case that talks about being a bona fide owner is someone that takes title for value and good faith. Title never transferred. So I don't think that there's a solid argument that they're an owner. To be a lender under the statute, I'm contending that a lender is not anyone who has given some sort of consideration for possession of a piece of personal property. I think that's more expansive than the statute contemplates, if that's what it contemplates. I mean, just as lender, if I give you, loan you money, and of course I guess if it were in a citation, it would be irrelevant unless they were taking interest or something in some property that the judgment creditor was trying to get. What else can you call that transaction other than a loan? Well, in this case, you could call it a bailment. I suppose that's how the Supreme Court's defined. And I think that's right. I think it is, but the law school bailment is the parking garage or the cleaners where you take your clothes and things like that. And even if it, assuming it is a bailment, is the concept of bailment and loan mutually exclusive? If I could back up a little bit, just talk about a different area of law in the context of what a lender is, just by way of example. The mechanics lien statute says that you must give notice to the owners and the lender. It doesn't say what a lender is. It's not defined. But the case law has said that a lender is someone who has a secured interest in the property, someone who has a mortgage against the property. You could interpret that more broadly and say that a lender is anyone who owes the owner money. I mean, anyone who's lent the owner money. But it wouldn't make sense in context if you're talking about a secured interest in a piece of real estate. So lenders are people that have mortgages. In this case, I'm arguing that lenders are people that have a valid secured interest in the piece of personal property. But this, well, in a mortgage case, you know, the mortgage holder that mortgages a lien on the house I live in. This would be more analogous to until I pay off that house, the banker is living in my house. And then I get it when I pay it off. I mean, like I said, this is even, for lack of a better term, almost a super-secured transaction because they've not only got the right to transfer title after that time, but they've got possession of the collateral. But it's unperfected. My argument is it's not perfected because they didn't follow the statute. Let's take that mechanics lien. There's more mechanics liens on cars than real estate. Well, there's more liens on title. That's for sure. What I'm saying is that, you know, if your car's in the shop today, there's a mechanics lien right now. There's a labor lien that can be enforced by the, what they call a mechanics lien. There's possession of your car. They have a statutory lien that they have to follow certain statutory provisions to enforce. I would agree. And part of that statute just allows them to retain possession until they've adjudicated that lien. And there's notices that are required, things like that. For an automobile that's being secured for purposes of an exchange of money, I think the statute requires that they record their lien on title, and that's what perfection is for a lien on an automobile. Perfection for a judgment creditor is service of the citation on the owner of that vehicle, which always has been and still is Justin Kavanaugh until there's an order allowing us to change possession of that vehicle and sell it. So in the context between two security creditors, we have a perfected security interest and the pawn shop does not. And they're not even allowed one under their agreement. But if your argument, the problem I have with that, if that's true, then why what use is the statutory language that the lien is good to everybody except purchasers and lenders without notice? Well, if you purchased it or made the loan before the citation lien was established, you couldn't have notice of something that didn't exist because it wasn't even there. So that can logically only apply to loans or purchases that took place after the but before the purchaser or lender had notice. Because if you say, well once I got my citation lien, I've got prior my lien has priority over theirs, well then this language is superfluous because it could only refer then to people who made loans or purchases before the citation lien because it didn't exist. If they had properly perfected the security interest in the motorcycle before they were served with the citation, I think it would be a different case. Because then they would have a perfected security interest without notice. Right now they don't have that. But the statute doesn't say secured lenders, it says lenders. And my argument is that in context it couldn't be broader than someone who has that kind of an interest. Otherwise there wouldn't be any rights to adversely affect. But in a broader sense, and this is I think an argument that I made in my brief, when the statute was put into place, it was following some case law and I think some debate about whether or not a lien was created at all by a citation. And there's some cases that are cited about what the effect is on third parties that have taken action without notice. So if I serve a citation on Mr. Kavanaugh, let's say instead of a motorcycle he had a bank account with $10,000 in it. Then the bank allowed $5,000 of that to be spent. Then I served the bank with a third party citation. I would not be able to stop the bank or proceed against the bank for allowing that $5,000 to leave, even though I had a lien against that $10,000 by virtue of serving Mr. Kavanaugh. So in a more literal sense, by saying you can't affect their rights until they have notice, you mean due process rights, they cannot be affected by the proceeding at all until they have notice of it or served with it. So if you're a secured party and you have a properly protected security interest in equipment, I serve the corporation debtor with the citations. Now I have a lien on everything. They go ahead and they enforce their security interest and they sell all the equipment. I get nothing. All the equipment's gone. Because they never knew about it, by the time I serve them with it, it's too late. Even though I had a lien, the lien is not going to affect the rights that they already had. I think that that was the purpose of having that language was to protect the due process rights of third parties. But lenders and bona fide purchasers also have due process rights. And the problem here is basically you've got two innocent people, your client and Appellant's client, so now you've got two people, there's no question, they're both good folks, and you've got a bad guy in the middle who is doing this. So the statute seems to want to balance those rights out there, so it's not like anybody is between you two, anybody's trying to steal anything from each other, right? Both innocent people and you're trying to get $10 out of somebody who doesn't have any and figure out how to do it. The lender and the purchaser, they've got due process rights too. And if they do an arm's length transaction in good faith with somebody, they've got the right to rely on that also. I would challenge the characterization of an arm's length transaction in good faith in this case, and I think the trial court judges did as well, given that they're charging 240% interest. But the statute allows it. It does. It has to go to 241% before it's usury. Why do you say arm's length transaction? Well, Justice Schmidt commented that if there's a good faith arm's length transaction, that their due process rights should be allowed. Our argument at trial, and I guess now is, that there's a certain amount of risk involved in a pawn transaction. That's why they're charging 240% interest. That possession of these things and ownership of these things is often in question, and that this is not a good faith fair market transaction. The risk from the business standpoint is, will I be able to get rid of this property? That's the risk. I can put it on my shelf, I can put it on my lot, and the risk is, have I loaned too much money that I'm not going to recover once I dispose of the property? I think very often the property they receive ends up stolen and is returned to the police. I think that's a regular common occurrence at pawn shops. That's a legitimate risk. That's another risk. If I were listing the risks of advising a client to go into that business, that would be a risk as well. But also a risk of pricing out the goods is another risk. And there's risks in pawn concrete for people when you don't get paid up front. And there's risks in practicing law when clients work for it. You do a lot of work for a client and you get stiffed at the end because they don't pay your bill. The business is full of risks. Sure. This is a different grade of illegal transaction. It wasn't a stolen motorcycle, but it was a contemptible sale of a leaned vehicle that he knew was leaned. No question about it. And I don't think the appellant argues with that either. But we're talking about the pawn group. What'd they do wrong? They did not perfect their security interests. That's where I have a question because I don't understand your approach to that because pawns are much older than secure transactions. They're much older than the UCC. They've been around for a long time. And they have all these risks that people talk about. But when this pawn and the pawn broker took the property and had this possessory interest in it, and if the guy doesn't show up and there are other things they can do, they had in competing with your right under the citation proceeding, which one wins? Isn't that what the statute's designed to perfect? I think that the UCC is designed to adjudicate the difference between secured interests. If this had been a diamond ring instead of a motorcycle, again it would be a different case because mere possession of that item would have perfected the security interest. But because it's a motor vehicle, the only method of perfecting their lien based on the loan to the Secretary of State by recording their loan title. That's why they've got the document to allow them to do that if the guy doesn't show back up. And I think they were not going to perfect a lien pursuant to a loan. It looked as if they were going to take ownership. Yeah, but they had a power of attorney to do that. Right. What authorities have the title to perfect the lien? Yeah, they have the title to transfer the contract that says that's yours after so and so time. He's still got a lien and sometimes you have to go out and sue him or go get a judicial, get a court to do what it's done. But just because you haven't recorded the title of a car doesn't mean you don't have a lien on it or a perfected lien. What you need the title for and the recorded title is so that you can transfer that car to somebody else. And I'm saying that I believe the statute says specifically your lien is perfected upon registering it with the Secretary of State. That's how you perfect the lien. A mechanic's lien. No, a mechanic's lien you get perfected by a security interest in a motor vehicle. A mechanic's lien against property would be perfected by recording in service of the 90 day notice and things like that. And at the end of whatever the redemption period is, the pawnbroker doesn't just have a security interest. He owns it. And if he doesn't have the title and he goes through with somebody and there's a way to get the Secretary of State to issue, you know, show him the contract probably have to go into court and get a judge to sign something, sign up with the Secretary of State. But at the end of the loan, he no longer, at the end of the redemption period, the pawnbroker isn't somebody with a security interest. He's the owner. I would agree, but he wasn't the owner when he was served with the citation. And at that point our security interest was superior. Unless there are other questions. You agree there's no prior law on this section? I agree that this section of the statute has only been commented on by federal district courts and bankruptcy courts. There's never been an Illinois case. Well, you're going to make history. And like you said, you can take your time because no one's driving you for a while. All right. Mr. McClary, some rebuttal? In regard to the bailment issue, and this speaks to just how amorphous a pawnbroker situation is. It's a 1920s Illinois Supreme Court decision which construed it as a bailment. I would note that under 810 ILCS 5-7-403b a person claiming goods covered by a document of title shall satisfy the bailee's lien if the bailee so requests or if the bailee is prohibited by law from delivering the goods until the charges are paid. If this is a bailment, I think my client has a bailee lien for the value of that motorcycle. I would not concede that it is a bailment. I think it's more reasonably construed as a loan or as a loan of pre-purchase. But if it is a bailment, I think there's a bailment lien. It might just be a pawn. Your Honor, it might just be a pawn. Sometimes a cigar is just a cigar. In regard to the citation served upon a third party, one issue that I didn't bring up is the fact that, okay, it's served upon a third party. What is it a citation against? It's against any property that the pawnbroker has that belongs to Mr. Cavanaugh. We would submit that at the time the third party citation was served, Mr. Cavanaugh no longer owned that motorcycle. He had basically an interest to come in and pay $4,200 by October 17th. That's the only way he could get the motorcycle back. And that's the only property interest that Mr. Cavanaugh still had in that motorcycle at the time that the citation was served upon my client. So redemption was $4,200? That's correct, Your Honor. And how much was the money? $3,500. And unless there's any other questions, that's all I wanted to raise. Thank you, Your Honor. Thank you. And Mr. Geiger, thank you too for your arguments here today. The matter will be taken under advisement and a written disposition will be The court will adjourn until 9 o'clock in the morning.